NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THOMAS L. BUNN, JR.,**

      **Plaintiff,**

**-vs-**                                           Case No. 6:12-CV-1479-ORL-22KRS

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Thomas L. Bunn, Jr. seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 13, the parties' memoranda, Doc. Nos. 21, 22, and a motion to remand and response thereto, Doc. Nos. 23, 24.[1]

## PROCEDURAL HISTORY.

In 2009, Bunn filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C.

---

[1] On July 24, 2013, I deferred ruling on the motion for remand and indicated that the issues raised in the motion would be addressed when considering the merits of the parties' memoranda of law. Doc. No. 25.

NOT FOR PUBLICATION

§ 1381, *et seq.* (sometimes referred to herein as the "Act"). He alleged that he became disabled on August 28, 2007. R. 134.[2]

After his applications were denied initially and on reconsideration, an administrative law judge ("ALJ") held a hearing at Bunn's request. Bunn, represented by an attorney, and a vocational expert ("VE") testified at the hearing. R. 26-59.

After considering the testimony and the medical evidence presented, the ALJ determined that Bunn was insured under OASDI through December 31, 2009. R. 14. The ALJ found that Bunn had not engaged in substantial gainful activity since the alleged disability onset date of August 28, 2007. *Id.*

The ALJ concluded that Bunn had degenerative disc disease status post spinal fusion, which was a severe impairment. *Id.* The ALJ found that Bunn's impairments or combination of iimpairments did not meet or equal any listed impairment. *Id.*

The ALJ found that Bunn had the residual functional capacity ("RFC") to do a range of light duty work as follows:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and/or walk for about six hours each, with normal breaks, in an eight-hour workday. The claimant needs the use of a cane for balance and ambulation. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can never crawl or climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights.

---

[2] The OASDI application does not appear in the record before the Court.

R. 15. In making this assessment, the ALJ gave significant weight to the opinions of Alvan W. Barber, M.D., and David Guttman, M.D. (Exhibit 11F), and to the MRI special study report identified by the ALJ as having been submitted by Frank Mari, M.D. R. 17-18. The ALJ also gave significant weight to treating records from Unique Health Care of Orlando and Central Florida Regional Hospital, but he gave no weight to the RFC assessment of Allan Zubkin, M.D., one of Bunn's treating physicians at Unique Health Care. R. 18. The ALJ found that Bunn was less than a fully credible witness. R. 17.

The ALJ concluded that Bunn could not return to his past relevant work. R. 18. In reliance on the testimony of a VE, the ALJ concluded that there was other work available in the national economy that Bunn could perform. R. 19. Therefore, the ALJ found that Bunn was not disabled. *Id.*

Bunn sought review of the ALJ's decision by the Appeals Council. R. 7. On September 11, 2012, the Appeals Council issued a decision finding no basis to change the ALJ's decision. R. 1-3.[3]

Bunn seeks review of the Commisioner's decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Bunn having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial

---

[3] In response to subsequently filed disability applications, the Commissioner determined that Bunn was disabled as of December 31, 2012. Doc. No. 23-2 at 3.

evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I will only summarize facts necessary to address the issues raised in order to protect Bunn's privacy to the extent possible.[4]

Bunn was born in 1963. R. 30. He completed high school. R. 32.

Bunn previously worked as a truck driver and building pool enclosures. R. 31-33. He broke his neck when he fell, following which he had neck fusion surgery with a plate inserted. R. 32. He had not worked since August 28, 2007. R. 38.

Medical records confirm that Bunn had disc herniations in the cervical spine and thoracic spine as of August and September 2007. R. 257, 269-70. Bunn complained of pain in his neck radiating to his arm and fingers with paresthesias with headaches. R. 256, 261. Physical therapy did not significantly improve his symptoms. R. 253. A C5-C6 anterior cervical discectomy and fusion was performed on November 1, 2007 with insertion of a plate and screws. R. 239, 243, 245. Marked degenerative changes were observed in a cervical spine imaging taken on December 13, 2007. R. 239.

An MRI of the cervical spine was performed in March 2008, based on Bunn's complaints of severe headaches, facial pain and numbness. R. 290. Diffuse degenerative disc disease was observed with broad-based protruding discs and osteophytes and some stenosis. R. 289. It appears that Bunn initially received pain management at Medi. Care

---

[4] The Commissioner adopted the facts stated in the ALJ's decision, Doc. No. 22 at 3, in violation of the Scheduling Order, Doc. No. 18 at 2 n.1.

Clermont from Donald C. Edwards, M.D.  R. 278-79.  Dr. Edwards treated him with Percocet, Flexeril, a Lidoderm patch and, later, Oxycodone and Xanax.  R. 277, 279, 303-10.[5]

A medical report dated November 2008 indicates that Bunn was moving to Texas.  R. 276.  On November 24, 2008, Bunn was examined by Richard C. Hinton, M.D., a neurologist, based on complaints of headaches since his surgery and pain with weakness and numbness recently in his leg.  He also reported low back pain.  Upon examination, Dr. Hinton observed some generalized weakness in Bunn's left leg and pain on straight-leg raising test.  He prescribed medication for headaches.  R. 330.

Bunn sought emergency room treatment in Dallas on December 2, 2008 due to left leg pain.  R. 316-18.  An MRI showed disc protrusion at L4-L5 pressing on a nerve root and a disc bulge at L4-L5.  R. 318, 322.

Bunn had returned to Florida by July 2009.  On July 16, 2009, he sought treatment from Central Florida Primary Physicians after injuring his lower back during a fall.  R. 335.  A cervical MRI on August 12, 2009, revealed stable moderate right neural foraminal stenosis and stable mild degenerative disc disease at C4-C5.  R. 345-46.  An MRI of the lumbar spine taken on the same date show disc bulges with moderate stenosis at L3-L4.  R. 347.

Dr. Mari examined Bunn on August 7, 2009.  R. 338, 341.  Bunn complained of neck pain and parathesia, low back pain and a problem with his leg.  R. 342.

---

[5] On October 3, 2012, Dr. Edwards completed a questionnaire at the request of Bunn's attorney. He indicated that Bunn could not bend, stoop or use both hands to work with small objects.  He could not sit upright in a chair or be on his feet for 2 hours or more in an 8-hour workday due to back pain.  He would have debilitating headaches approximately 3 times a week lasting an average of 3 to 6 hours, and side effects of medication would prohibit him from concentrating even 2 hours at a time.  Dr. Edwards opined that Bunn could not perform even sedentary work activity on a sustained and reliable basis.  He indicated that Bunn's condition had been the same since 2007.  Doc. No. 23-1.

NOT FOR PUBLICATION

Rafael Allende, M.D., a neurosurgeon, examined Bunn on August 19, 2009 at the request of Dr. Mari.  Bunn complained of a headache persisting since his surgery with some neck pain that was progressively worsening.  He also had some right upper extremity pain and increased numbness of his left leg, which gave out on him at times.  R. 363.  Upon examination, Dr. Allende observed decreased sensation in the right upper extremity.  Bunn walked with an antalgic gait.  R. 364.  Dr. Allende wrote, after review of MRIs, that Bunn had progressive degenerative changes in C4-C5 with moderate encroachment of the spinal canal and a bone spur on the left side.  He recommended further testing.  R. 365.

A nerve conduction study in September 2009 showed evidence of subacute C5-C6 radiculopathy and mild right neuropathy at the wrist.  R. 369. On September 30, 2009, Dr. Allende wrote that this test result was consistent with mild right carpal tunnel syndrome and showed an abnormality at C5-C6.  Dr. Allende recommended continued treatment by a pain management specialist.  R. 362.

Meanwhile, on August 20, 2009, Bunn treated with Dr. Zubkin and Dr. Edwards at Unique Healthcare Orlando.  R. 408.  Upon examination, Dr. Zubkin observed pain in Bunn's head, neck and spine with range of motion.  His assessment was lumbar degenerative disc disease, lumbar arthralgia, displacement of lumbar intervertebral discs and degeneration of cervical intervertebral discs.  He prescribed Flexeril, Oxycodone, Xanax and other medication.  R. 409.  Dr. Zubkin, Dr. Edwards and others at Unique Healthcare continued to treat Bunn with narcotic pain medication through at least February 2011.  R. 410-451.  On December 17, 2009, Bunn reported that he was in pain all the time but he could tolerate it with medication.  R. 414; *accord* R. 417.  His pain was worse when he lost his insurance and could not pay for long-acting medication.  R. 420.  Beginning in April 2010, Bunn complained

of numbness in his left leg and right arm. R. 426. He continued to complain of back and neck pain and headaches. R. 429, 432, 435, 438, 441.

Dr. Zubkin prepared a physical RFC assessment on November 13, 2009. He opined that Bunn could walk ½ block, sit 10 minutes and stand 5 minutes at a time. R. 373. In an 8-hour workday, he could sit and stand or walk as total of less than 2 hours. R. 374. Bunn could occasionally lift 10 pounds and frequently lift less than 10 pounds. R. 374. He would be limited in use of his hands and arms. R. 375.

Meanwhile, Dr. Barber examined Bunn on September 28, 2009 at the request of the SSA. Bunn complained of pain and headaches. R. 353. Upon examination, Dr. Barber observed numbness and tingling in the right shoulder to fingers and left hip to toes evaluated by light touch. A straight-leg raising test was positive for left low back pain. R. 356. Dr. Barber observed that Bunn walked with a limp and was unable to squat. R. 357. His impression was cervical degenerative disc disease, lumbar degenerative disc disease with low back pain and a headache disorder. Dr. Barber opined that Bunn could walk, stand and sit for reasonable periods of time and that he could not lift or carry heavy items. *Id.*

On December 23, 2009, Dr. Guttman prepared a physical RFC assessment after review of Bunn's records. He opined that Bunn could lift 20 pounds occasionally and 10 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour workday. R. 378. He could only occasionally engage in postural activity and never climb ladders, ropes and scaffolds. R. 379.

A lumbar MRI taken in December 2010 showed moderate disc degeneration at the lower three lumbar levels, spondylosis and bulging discs. There was also annular tears at

L4-L5 and L5-S1.  R. 385.  Another lumbar MRI taken in January 2011 showed abnormal findings.  R. 399.

In January 2011, Bunn was treated at a hospital.  The discharge diagnoses were left lower extremity deep vein thrombosis and hepatitis C, among other things.  R. 491.

At the ALJ's hearing, Bunn estimated that he could stand 3 minutes and sit 5 to 10 minutes due to damaged nerves in his neck and lower back.  R. 39.  He could walk a very short distance with a cane.  R. 50; *accord* R. 168, 178, 185.  He estimated that he could lift 5 pounds. R. 44; *see also* R. 177.  He had chronic migraine headaches due to damage to nerves in his neck following fusion surgery.  R. 49; *accord* R. 159, 167, 174.  Medication, injections and physical therapy did not relieve his pain.  R. 41-42.

Bunn did not drive because he could no longer push in a clutch of a truck due to problems with his left leg.  R. 31; *see also* R. 167.  He did not trust himself to drive after being involved in a significant motor vehicle collision while a truck driver.  R. 34.

The ALJ asked the VE to assume a hypothetical individual of Bunn's age, education and vocational background.  This individual could perform light work with the following restrictions: "Occasionally climb stairs, balance, stoop, kneel, and crouch.  Never climb ropes, ladders, or scaffolds.  Never crawl.  Avoid concentrated exposure to hazards such as machinery and heights. . . . [T]his person also had a need for an assistive device such as a cane . . . ."  R. 52-53.  The VE testified that this person could perform unskilled, light exertional work available in the national economy, specifically office helper, ticket seller and surveillance system monitor.  R. 53-54.  If the hypothetical person would be off task for 25% of the day due to pain, the VE indicated that there would not be any work he could perform.  R. 56-57.

NOT FOR PUBLICATION

## ANALYSIS.

In his memorandum of law, Bunn asserts a number of assignments of error. In sum, he contends that the ALJ did not adequately review all of the evidence in the record, did not include functional limitations identified by treatment providers to whom he gave significant or great weight and, as a result, that the hypothetical question to the VE was incomplete. In his motion for remand, he contends that a sentence six remand is warranted based on a new RFC assessment prepared by Dr. Edwards, one of his treating physicians. These are the only issues I will address.[6]

*Bunn's Physical Impairments and Functional Limitations.*

Bunn argues that the failure to include headaches as a severe impairment at step two of the analysis is error. Controlling law provides that there is no step two error when the ALJ finds at least one severe impairment and continues the analysis through the rest of the sequential evaluation process. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Because the ALJ found one severe impairment at step two and continued the evaluation, there is no step two error here.

Nevertheless, the Eleventh Circuit requires an ALJ to consider a claimant's entire medical condition in his analysis. *Id.* When the ALJ does not do so, the Court cannot effectively perform its duty to ensure that the ALJ applied the correct law and that the decision is supported by proper application of the law. *Id.* at 588-89; *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

---

[6] The parties were advised in the Scheduling Order that issues not specifically raised may be waived. Doc. No. 18 at 2.

In the present case, Bunn consistently complained of headaches following his cervical spinal fusion surgery. The ALJ's decision does not mention headaches or address whether they resulted in any functional limitations. The Commissioner argues that the omission is, essentially, harmless because the ALJ gave significant weight to the opinion of Dr. Guttman, a reviewing physician, and Dr. Guttman considered Bunn's complaints of headaches. While it is true that Dr. Guttman referenced "daily migraines, since C spine surgery" in his summary of the evidence of record, he did not explain why he found that functional limitations, if any, from headache pain was adequately accounted for in his RFC assessment. R. 378. Thus, Dr. Guttman's report does not fill in the missing explanation of how Bunn's headaches were accounted for in the RFC assessment or why the ALJ concluded that there were no functional limitations from these headaches.

This is not the only evidence omitted from the ALJ's decision. The medical records reflect Bunn's complaints of numbness and tingling in his shoulder radiating to his fingers. The ALJ purported to rely on a report by Dr. Mari regarding an MRI of the thoracic spine taken in August 7, 2009. R. 16 (citing Exhibit 6F). Exhibit 6F contains one record of treatment of Bunn by Dr. Mari on August 7, 2009 *before* the thoracic MRI was taken on August 26, 2009. R. 343. The report the ALJ referred to is from the radiologist, not Dr. Mari. In addition to this error, the ALJ did not address a subsequent nerve conduction study ordered by Dr. Allende that showed evidence of subacute C5-C6 radiculopathy and mild right neuropathy at the wrist consistent with mild right carpal tunnel syndrome and an abnormality at C5-C6. R. 362.

The Commissioner's after-the-fact arguments about why the record supports the ALJ's findings cannot cure these omissions. "We decline . . . to affirm simply because some

rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Accordingly, I recommend that the Court find that the ALJ's decision is insufficient to perform an effective review, reverse the Commissioner's decision under sentence four of § 405(g), and remand the case for further proceedings.

*Motion for Remand.*

Bunn asks that the Court also remand this case under sentence six for consideration of an RFC questionnaire prepared by Dr. Edwards on October 3, 2012, after the Appeals Council denied the request to review the ALJ's decision. The Commissioner argues that this RFC assessment is not material and because Bunn has not shown good cause for failure to submit the opinion before the Appeals Council rendered its decision.

Although dual remands under sentence four and sentence six of § 405(g) are possible, Bunn has not established what useful purpose a dual remand would have in this case. The Commissioner should consider all of the relevant evidence on remand under sentence four. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983). Therefore, if the Court accepts the recommendation that the ALJ's decision be reversed under sentence four, the motion for remand should be denied as moot.

If the Court chooses to consider the motion for remand on the merits, I recommend that it be denied for lack of a good cause showing why the questionnaire could not have been requested from Dr. Edwards and submitted to the ALJ or the Appeals Council. While counsel argues that he did not obtain the complete record from Dr. Edwards until July 2013, there can be no doubt that Bunn knew that Dr. Edwards was one of his treating physicians at the time of the hearing before the ALJ. *See* R. 46 (Bunn testified at the ALJ's hearing that Donald Edwards was his doctor). Bunn has not shown that the information on which Dr.

NOT FOR PUBLICATION

Edwards relied to prepare the questionnaire was not available before the Appeals Council issued its decision.  *See, e.g., Vlamakis v. Comm'r of Soc. Sec.*, 172 F. App'x 274, 277 (11th Cir. 2006) (unpublished decision cited for its persuasive value).[7]

## RECOMMENDATION.

For the reasons discussed above, I respectfully recommend that the Court **REVERSE** the Commissioner's decision pursuant to sentence four of § 405(g) and **REMAND** the case for further proceedings.  I further recommend that the Court **DENY** Plaintiff's Opposed Motion to Remand (Doc. No. 23).  Finally, I recommend that the Court direct the Clerk of Court to enter judgment consistent with its order on this Report and Recommendation and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** this 4th day of December, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[7] The motion for remand was also untimely.  Under the Court's Scheduling Order, Bunn was required to present all issues in a memorandum filed on or before February 18, 2013.  Doc. No. 18.  Counsel does not explain why Bunn's wife could not have gone to Dr. Edwards office to obtain the complete medical records sufficiently before the memorandum due date in order to incorporate all of his arguments in his memorandum of law.